# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GEORGE KEVIN SAUNDERS,**

    **Plaintiff,**

**v.**                                                                  **Civil Action No. 5:14cv48**
                                                                                    **(Judge Stamp)**

**UNITED STATES OF AMERICA,**

    **Defendant.**

## REPORT AND RECOMMENDATION

### I. Factual and Procedural History

On April 17, 2014, the plaintiff filed a complaint under the Federal Tort Claim Act alleging deliberate negligence on the part of USP Hazelton staff members with respect to a fight that occurred at that institution on January 9, 2012. On April 21, 2014, the plaintiff was granted leave to proceed without prepayment of fees. On that same date, Magistrate Judge Seibert conducted a preliminary review of the complaint, determined that summary dismissal was not warranted, entered an order to answer, and the clerk was directed to issue a 60-days summons for the USA. On July 25, 2014, the United States filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with supporting memorandum. On July 30, 2014, a Roseboro Notice was issued. On September 25, 2014, the plaintiff filed a brief in opposition to the defendant's summary judgment motion, together with a statement of disputed facts and a declaration in opposition. Also pending is the plaintiff's motion to amend his complaint to add a claim pursuant to <u>Bivens</u>.

### II. The Pleadings

#### A. The Complaint

The plaintiff indicates that between 6:30 a.m. and 9:30 a.m., a black inmate stabbed a white inmate in the commissary at USP Hazelton. The plaintiff further alleges that between 5:00 p.m. and 6:00 p.m., on that same date, a large number of white inmates were able to get through metal

detectors with metal shanks and other metal weapons and go to the law library where they sought out any black inmates they could find. The plaintiff alleges that he was assaulted and stabbed several times in retaliation for the stabbing earlier that morning. The plaintiff also alleges that he suffered further injury when staff slammed him on the floor while his hands were handcuffed behind him and an unknown officer slammed his boot down on the back of his head causing him to crack a tooth and injure his mouth. The plaintiff is seeking compensatory damages in the amount of $25,000.

The plaintiff alleges that his injuries were caused by multiple negligent acts on the part of Warden Terry O'Brien, Lt. Ousley, the operations officer, Officer Smith and unknown staff members. Specifically, the plaintiff alleges that (1) Warden O'Brien was negligent in not placing USP Hazelton on lockdown following the early morning stabbing; (2) Lt. Ousley and staff were negligent in taking 23 minutes to respond to a call for assistance from Brian Henderson; (3) staff was negligent in allowing a large number of white inmates through check points of the metal detectors with metal shanks and other metal weapons; and (4) Officer Smith and Lt. Ousley were negligent in escorting him past his assailants instead of taking him out through another door.

**B. Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment**

In their motions, the defendants argue that the plaintiff's complaint must be dismissed in its entirety. In support of their motion, the defendants contend that the plaintiff's allegations that the prison should have been locked down; that staff took too long to respond to the assault; and he was wrongfully walked past his assailants all involved discretionary actions, and the actions were grounded in public policy. In addition, the defendant contends that the plaintiff's allegations that staff was negligent because weapons were brought through metal detectors is meritless.

**C. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss**

The plaintiff argues that there are genuine issues of material fact that preclude summary

judgment on his claim for negligence and failure to protect.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass

3

v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986). In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the]

4

pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## IV. Analysis

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.Pursuant to the FTCA, the United States is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 2674 & 1346(b)(1); Medina v. United States, 259 F.23d 220, 223 (4th Cir. 2001). In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; and (3) injuries received

5

thereby, resulting proximately from the breach of that duty. Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W.Va. 1939). The burden is on the plaintiff to prove these elements by a preponderance of the evidence. Id. at 899; see also Murray v. United States, 215 F.3d 460, 463 (4th Cir. 2000). Therefore, the plaintiff must prove that the "defendant's breach of duty was more likely than not the cause of the injury." Murray at 463 (quoting Hurley v. United States, 923 F.2d 1091, 1094 (4th Cir. 1991); see also Strahin v. Cleavenger, 603 S.E.2d 197 (W.Va. 2004)(stating that "no action for negligence will lie without a duty broken.").

The FTCA includes specific enumerated exceptions in 28 U.S.C. §2680. If an exception applies, the United States may not be sued, and litigation based upon an exempt claim is at an end. Smith v. United States, 507 U.S. 197 (1993); Dalehite, *supra*. Among the exceptions to the FTCA most frequently applied is the "discretionary function." The discretionary function exception precludes governmental liability for "[a]ny claim based upon ... the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). Congress believed that imposing liability on the government for its employees' discretionary acts "would seriously handicap efficient governmental operations." Id. at 814 (internal citations and quotations omitted).

The United States Supreme Court has announced a two-step test for determining whether the discretionary function exception bars suit against the United States in a given case. First, the Court must consider the nature of the conduct and determine whether it involves "an element of judgment

or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991). Government conduct does not involve an element of judgment or choice and is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Id. at 322 (internal citations and quotations omitted). If the conduct in question involves the exercise of judgment or choice, the second step of the analysis is to determine whether that judgment is grounded in considerations of public policy. "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 323.

With respect to federal prisoners, the Supreme Court has determined that the duty of care owed by the BOP is fixed by 18 U.S.C. §4042, independent of an inconsistent state rule. United States v. Munitz, 280 F. Supp. 542, 546 (S.D.N.Y 1968). Title 18 U.S.C. §4042 defines the duty of care owed to a prisoner as "the exercise of ordinary diligence to keep prisoners safe and free from harm." Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976). However, the BOP's duty towards the protection of prisoners is not the guarantee of "a risk-free environment." See Usher v. United States, 2010 WL 3721385 (E.D. Ky. Sept. 15, 2010).

In West Virginia, negligence is "always determined by assessing whether the actor exercised 'reasonable care' under the facts and circumstance of the case, with reasonable care being that level of care a person of ordinary prudence would take in like circumstances." Strahin v. Cleavenger, 603 S.E.2d 197, 205 (W.Va. 2004). "A long standing premise of the law of [West Virginia] is that negligence is the violation of the duty of care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place, manner, or person." Setser v. Browning, 590 S.E.2d 697, 701 (W.Va. 2003). Accordingly, the duty of care owed to an inmate under West Virginia

law is consistent with 18 U.S.C. §4042.

Although 18 U.S.C. §4042 sets forth the mandatory duty of care, it does not direct how the duty is fulfilled. See Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997)(finding the statute "sets forth no particular conduct that the BOP personnel should engage in or avoid while fulfilling their duty to protect inmates."). However, under the FTCA, in disputes between prisoners, it is clear that BOP employees could be negligent in their duty to protect prisoners if they "knew or reasonably should have known of a potential problem" between inmates. Parrott v. United States, 536 F.3d 629, 637 (7th Cir. 2008).

**Failure to Lockdown USP Hazelton; Response Time; Wrongfully Walked Past Assailants**

The defendant acknowledges that on January 9, 2012, at approximately 9:05 a.m., a black inmate stabbed a white inmate in the commissary. Staff placed both inmates in the Special Housing Unit. The defendant also acknowledges that the institution was not locked down after this incident. The defendant further acknowledges that on that same day, at approximately 5:15 p.m., the Education Specialist, Brian Henderson, spoke with the Operations Lieutenant, Herbert Ousley, to report that an unusually large number of white inmates were gathering at the Education Department. According to his declaration, Lt. Ousley stated that he would be right down. Lt. Ousley was in the dining hall when he got the call, and inmates were arriving for dinner. He then made the decision to gather additional staff, and return to the Lieutenant's office where he could retrieve pepper spray in case it was needed.

After speaking to Lt. Ousley, Mr. Henderson began his rounds and noticed several white inmates in the law library. He then saw an inmate, who was not in the computer class, head in that direction. Mr. Henderson attempted to question the inmate about his presence, but the inmate continued into the computer lab and ran at the plaintiff with a silver homemade knife. The plaintiff

grabbed a chair and began defending himself. Mr. Henderson then radioed for assistance but did not hear anything in reply. He believes he was in a "dead zone." As he was calling for assistance, he was physically pushed into the computer lab by a group of inmates who also began attacking the plaintiff and another inmate. Mr. Henderson ordered the inmates to drop their weapons and to break up the fight. An inmate then brandished a weapon in the direction of Mr. Henderson and stepped toward him. Mr. Henderson then backed out of the computer lab and again called for assistance on the radio. The emergency tones then went off, and the inmates stopped the attack and exited the computer lab. Mr. Henderson told them the door was locked, and staff was on their way. They then moved on their own into the law library just as responding staff entered the education building. (Doc. 18-3, pp. 1-2).

Staff handcuffed the plaintiff and proceeded to take him out of the Education Department to Health Services for treatment. The assailants were contained in the law library, and staff was restraining them. The door to the library was closed and locked. According to Lt. Ousley, as the plaintiff passed the window of the library, he became belligerent and began to pull away from staff. Lt. Ousley told staff to place the plaintiff on the ground and apply leg irons, which they did. The plaintiff was then escorted to health services. (Doc. 18-2, p.2).

According to Mr. Henderson, the only feasible way to get the plaintiff out of the building was to lead him past the law library where the assailants were being held. The Education Department has a total of 3 doors. However, only one door is located in an area where the plaintiff would not pass by the law library, and that is the door leading to the psychology department. Use of that door was not possible, because educational staff, and apparently correctional staff, does not have keys to exit the psychology department. (Doc. 18-3. pp. 2-3).

As previously noted, the plaintiff alleges that Warden O'Brien and his staff were negligent when they failed to lock down the institution following the morning stabbing in the commissary.

9

However, there is no mandatory directive that requires a warden to lockdown an institution after a fight between two inmates, even if the inmates are of different races.[1] As noted by the defendant, during a lockdown, inmates are prevented from moving around the institution; visitation, recreation and work duties are canceled, and food and medical services are disrupted. Because there is no policy requiring a lockdown following an incident like the morning stabbing of a white inmate by a black inmate, it is the warden's decision as to when security concerns rise to the level where an institution needs to be on lockdown. (Doc. 18-2, p.2).

Likewise, there is no mandatory directive that prevents an inmate from being walked past assailants. As noted by the defendant, varying circumstances, including the buildings layout, the available exits and entryways, type and severity of injuries sustained, are all factors that could influence a staff member's decision on the direction to escort an inmate out of the area. Here, the only door through which the plaintiff could have been moved through without passing the library, where his assailants were secured, was locked and staff on site did not have a key. Moreover, the plaintiff suffered no further injuries from his assailants during this process. Instead, to the extent that the plaintiff may have suffered injuries, it would appear to have been the result of his own belligerent behavior and attempt to pull away from staff.

The plaintiff also alleges that staff was negligent in not responding quickly enough to the assault. However, correctional officers responding to prison fights act with discretion based upon their judgment and experience. <u>Winters v. U.S.</u>, 2013 WL 1627950 *7 (S.D.N.Y. 2013). Decisions about how to intervene in a fight between inmates are "inherently susceptible to policy" analysis

---

[1] The plaintiff, in his response to the defendant's motion, has attached a copy of an August 25, 2014, memo from the Warden at USP Big Sandy outlining a Modified Movement Plan for Return to Normal Operations. It appears from the memo that "this lockdown" was implemented when inmates with weapons were involved in an altercation in a housing unit. (Doc. 26-1, p.1). However, nothing in this exhibit establishes that there is a mandatory directive that requires a lockdown following an altercation involving weapons. Rather, it simply suggests that the Warden at USP Big Sandy exercised his discretion and implemented a lockdown.

because they involve on-the-spot judgments based on considerations of inmate safety, officer safety, and available resources. Winters, at *6. Accordingly, "[c]ourts have consistently held that the decision as to how to respond to inmate violence is one grounded in policy considerations. Banks V. United States, 2010 WL 4100454 at *14 (S.D.N.Y. September 15, 2011) (Collecting cases), report and recommendation adopted by 2011 WL 54545550 (S.D.N.Y. Nov. 9, 2011).

In this case, it is undisputed that the initial contact made by Mr. Henderson to Lt. Ousley was simply to alert him to the unusual number of white inmate's gathering at the law library. Although he indicated he would "be right there," Lt. Ousley then made the decision to gather other correctional officers and secure pepper spray before proceeding to the library. When the emergency tones sounded, the responding officers including Lt. Ousley, arrived promptly. The tactical choice made by Lt. Ousley is exactly the type of policy judgment that the discretionary function is intended to shield.

Finally, the plaintiff alleges that Lt. Ousley and his staff were negligent in allowing a large number of white inmates to get through metal detectors check points with metal shanks and other metal weapons which were used to assault and stab him. In order to establish a prima facie case of negligence, "the plaintiff must show affirmatively the defendant's failure to perform a duty owed to the former proximately resulting in injury." George v. U.S., 2008 WL 2945543, *5 (N.D.W.Va.), *quoting* Kiern v McLaughlin, 121 W.Va.. 30 (1939). Therefore, the negligence issue is three steps: (1) did the institution owe a duty to the plaintiff while he was incarcerated; (2) did they breach that duty; and (3) was that breach of duty the proximate cause of the plaintiff's injuries. Id. In order to establish a prima facie case of negligence in West Virginia, the plaintiff must show that a defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action will lie without a broken duty. Crum v. Equity Inns, Inc., 224 W.Va. 246, 253 (W.Va. 2009).

Here, the plaintiff makes only a conclsuory assumption that because metal weapons were

present, staff was negligent. However, even if the plaintiff's complaint could be read as a claim under the doctrine of *res ipsa loquitor*, pursuant to West Virginia law, the *res ipsa loquitor* doctrine cannot be invoked where "the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but themselves must be presumed….The doctrine applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn under the circumstances." See Dickens v. Sahley Realty Co., Inc., 756 S.E.2nd 484, 491 (W.Va. 2014); quoting Davidson's Inc. v. Scott, 149 W.Va. 470 (1965).

Pursuant to the evidentiary rule of *res ipsa loquitor*, it may be inferred that harm suffered by the plaintiff is caused by the negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence, and (c) the indicated negligence is with the scope of the defendant's duty to the plaintiff. Foster v. City of Keyser, 501 S.E. 2d 165, 181 (1997).

Here, the plaintiff has not shown that possession of metal weapons is an event which ordinarily does not occur in the absence of negligence. The Court, no doubt, is fully cognizant of the many instances in which contraband, including metal weapons, is manufactured in or makes its way into BOP facilities. In the instant situation, the weapons may have been hidden on the compound, away from metal detectors. It is also possible that a metal detector may have malfunctioned. More importantly, the plaintiff has not eliminated the conduct of third parties, specifically the inmates who attacked him. Under West Virginia law, negligence must be the proximate cause of the injury of which the plaintiff complains. See Aikens v. Debow, 541 S.E.2d 576, 581 (W.Va. 2000), and any willful, malicious, or criminal act breaks the chain of causation. Yourtee v. Hubbard, 410 F.Supp.2d 471, 479-81 (S.D.W.Va. 2005). Accordingly, the intervening act of the inmates who attacked him

precludes proximate cause. See Harbraugh v. Coffinbarger, 209 W.Va. 57, 543 S.E.2d 338, 345 (W.Va. 2000); Hartman v. Bethany College, 778 F.Supp. 286, 292 (N.D.W.Va. 1991). Therefore, the plaintiff cannot show that the BOP employees were negligent simply because metal weapons were used to attack him in the law library.

The salient point guiding this court's review is the fact that the plaintiff bears the burden of proving that an equivocal waiver of sovereign immunity exists and demonstrating that the discretionary function exception does not apply. LeRose v. United States, 285 F. App'x 93, 96 (4th Cir. 2008); Welch v. United States, 409 Fed 3rd 646 (4th Cir. 2005). As outlined above, the plaintiff has failed to carry his burden.

Finally, it is pertinent to note that when a federal prisoner sues under the FTCA for injuries caused by a fellow inmate, this court and others have uniformly held the action to be barred by the discretionary function exception. See, e.g., Rich v. United States, 2014 WL 2778652 N.D.W.Va. 2014)(dismissing FTCA complaint alleging negligent failure to protect plaintiff from attack by prison inmates); Usry v. United States, 2013 WL 1196650 (N.D. W.Va. 2013) aff'd. Usry v. United States, 545 Fed. Appx. 265 (4th Cir. 2013)(upholding dismissal of FTCA complaint alleging negligent failure to protect plaintiff from an attack with a metal pipe by another prison inmate); Little v. United States of America, 5:11cv41-FPS-JSK N.D.W.Va. Aug. 8, 2014)(dismissing plaintiff's FTCA alleging negligence on the part of BOP in protecting him from attack with metal weapon by fellow inmates); Donaldson v. United States, 281 Fed. App'x. 75, 76-78 (3rd Cir. 2008)(upholding dismissal of a FTCA claim that federal prison employees failed to protect plaintiff from assault by a fellow prisoner on a finding that the claim was barred by the discretionary function exception); Alfrey v. United States, 276 F.3d 557, 565 (9th Cir. 2002); Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998)(reversing judgment in favor of prisoner who brought an FTCA action for injuries

13

sustained as the result of an attack by another inmate); Dykstra v. United States Bureau of Prisons, 140 F.3d 791 (8th Cir. 1998)(discretionary function exception applied, barring suit for BOP officials' failure to warn plaintiff that his youthful appearance might make him vulnerable to attack, or to place him in protective custody when plaintiff complained that fellow inmate was staring at him); Calderon v. United States, 123 F.3d 947 (7th Cir. 1997 (discretionary function exception applied to FTCA claim for government's failure to protect plaintiff from attack by cellmate); Buchanan v. United States, 915 F.2d 969 (5th Cir. 1990) (discretionary function exception applied to FTCA claim for damages by prisoners held hostage during a prison uprising); and Graham v. United States, 2002 U.S. Dist. LEXIS 1765 (E.D. Pa. Feb. 5, 2002).

In conclusion, the plaintiff's claims of negligence against the BOP officials, for failing to lockdown the institution, for failing to respond promptly, and for escorting him past his assailants, all involved "an element of judgment or choice." Gaubert, *supra* at 322. Federal courts have consistently held that because §4042(a) does not mandate a specific, non-discretionary course of conduct, a plaintiff must either demonstrate that other mandatory directives were violated, or that a BOP employee made a discretionary judgment not grounded in the policy of the regulatory regime, in order to establish subject matter jurisdiction. See, e.g., Calderon, 123 F.3d at 950 (holding that like §4042(a), the regulations within 28 C.F.R. §541 regarding inmate discipline and special housing units also provide general guidance to BOP employees). Here, the plaintiff has pointed to no mandatory directive that was violated and each action by the Hazelton officials involved an element of judgment or choice. Therefore, the inquiry then becomes whether the challenged action was based on considerations of public policy." Id. "Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic

14

policy." Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998). Because §4042(a) "is an established governmental policy . . . [that] allows a Government agent to exercise discretion" in providing for the safekeeping, protection, and care of inmates, it must be "presumed that the [BOP's] acts are grounded in policy when exercising that discretion." Gaubert, *supra* at 324.

While the undersigned finds that the attack on plaintiff was unfortunate, the plaintiff has failed to rebut that presumption. Thus, the undersigned finds that this court lacks subject matter jurisdiction to consider his claims.

**Motion to Amend**

On September 9, 2014, more than 21 days after the defendant filed its Motion to Dismiss, the plaintiff filed a Motion for Leave to Amend his complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. The plaintiff acknowledges that he requires leave of court to amend his complaint. The plaintiff maintains that his amended complaint relates back to the conduct or occurrence attempted to be set out in his the original complaint as a required by Rule 15(c). The plaintiff has attached a proposed amended complaint in which he seeks damages from Warden O'Brien, Lt. Ousley, Officer Smith, SIS Lt. Yeager, and Capt. Gilmore in their individual capacity under Bivens. After reciting the facts set forth in his FTCA complaint, the plaintiff alleges that the defendants were deliberately indifferent to his safety in violation of the Eighth Amendment to the United States Constitution. In addition, the plaintiff alleges that Mr. Henderson's failure to lock the law library and promptly conduct a pat search of suspicious white inmates constitutes the tort of negligence under the laws of West Virginia. Finally, the plaintiff alleges that the actions of Officer Smith and Lt. Ousley in using physical force against him without need or provocation was done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth

15

Amendment to the United States Constitution. In addition to monetary damages, the plaintiff seeks declaratory relief and reasonable attorney fees and costs.

On September 22, 2014, the defendant filed a response to the plaintiff's motion to amend. In it, the defendant argues that the motion should be denied because it does not "relate back" as required by Rule 15(c) for a number of reasons.

For purposes of explanation, a plaintiff seeking relief against a federal official for injury has two separate and distinct claims for relief. He may file a common law tort claim against the United States under the FTCA and, or in the alternative, he may file a constitutional tort claim against the individual officials under Bivens. The two claims are separate causes of action with different standards of proof, and there are advantages and disadvantages to each. The defendant in a FTCA action is the United States. However, in a Bivens suit, the defendant is the individual official. See 28 U.S.C. §§ 1346(b) & 2674. Therefore, payment of a successful FTCA claim is paid by the United States treasury; while a successful judgment against an individual may not be satisfied if the defendant lacks sufficient assets. In addition, while a jury trial is available in a Bivens action, only a bench trial is permitted under the FTCA. 28 U.S.C. § 2402. Furthermore, punitive damages are available in a Bivens action but are not available under the FTCA. Id. § 2674. Finally, and most importantly, a judgment under the FTCA constitutes "a complete bar to any action by the plaintiff, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim. This is true whether FTCA claim is brought before or after the Bivens claim, or if both claims are brought in the same suit. Likewise, this is also true whether the FTCA judgment is favorable to the plaintiff or the United States. *Compare* Unus v. Kane, 565 F.3d 103, 121-22 (4th Cir. 2009)(same suit, FTCA judgment for the United States), with Rodriquez v. Handy, 873 F.2d 814, 816 (5th Cir. 1989)(same suit, FTCA judgment for plaintiffs); *compare also* Farmer v. Perill,

275 F.3d 958, 959 (10th Cir. 2001)(different suits, FTCA judgment for the United States) with Moon v. Pace, 213 F.2d796 (5th Cir. 1954)(different suits, FTCA judgment for plaintiff).

Accordingly, in light of the undersigned's recommendation that the FTCA be dismissed with prejudice, it would appear that the plaintiff's Motion to Amend to add a Bivens claim is moot. Accordingly, the same should be denied. Furthermore, in the event that the Court should decline to adopt the undersigned's recommendation that the FTCA claim be dismissed with prejudice, it would appear that the Motion to Amend should still be denied because the plaintiff does not establish that he meets the requirements of FRCP Rule 15(c)(1)(C).

Rule 15(c) provides in pertinent part as follows:

(1) **When an amendment Relates Back**. An amendment to a pleading relates back to the date of the original pleading when:

   (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out –or attempted to be set out—in the original pleading; or

   (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

      (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

      (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Here, there is no question that the proposed amended complaint to allege a Bivens cause of action asserts a claim that arose out of the conduct, transaction, or occurrence set out in the plaintiff's original FTCA complaint. However, there is no mistake regarding the proper party's identity. The original complaint named the United States as the defendant. The plaintiff could have included a

Bivens claim contemporaneously. Instead, apparently faced with a Motion to Dismiss, he is attempting to add an entirely new cause of action and names as individual defendants, the same individuals identified in the FTCA as negligently causing his attack by a fellow inmate. It is the undersigned's opinion that this is not the type of amendment contemplated by Rule 15(c)(1)(C). Rather, it is intended to cover situations where a plaintiff wishes to amend his complaint to add a claim for punitive damages, for instance, and wishes to change the name of a defendant upon realizing, for example, that John Smith, MD, was actually Robert Brown, MD. Accordingly, the Motion to Amend should be denied regardless of the outcome of the FTCA claim.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. No. 17) be **GRANTED** and the plaintiff's Complaint be **DISMISSED with prejudice**. It is further recommended that the plaintiff's Motion for Leave to Amend (Doc. 24) be **DENIED**; and the plaintiff's Motion to Appoint Counsel (Doc. 31) be **DISMISSED AS MOOT.**

Within **fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 1208 (1984).

The Clerk of Court is directed to provide a copy of this Report and Recommendation to all

counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

Dated: December 8, 2014.

*/s Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE